CITY OF LONGVIEW, Texas, and A.J. Key, in his Official Capacity, Appellants,

v.

Jim HEAD d/b/a A & P Amusements, Appellee.

Bobby Weaver, Sheriff, Gregg County, Texas, Appellant,

v.

Jim Head d/b/a A & P Amusements, Appellee.

Nos. 12-00-00091-CV, 12-00-00103-CV.

Court of Appeals of Texas, Tyler.

Sept. 21, 2000.

Gary Shaver, Longview, for appellants.

Rex Nichols, Longview, for appellee.

Panel consisted of DAVIS, C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

Appellee, Jim Head, owns and operates amusement machines known as eight-liners. He filed a declaratory judgment action regarding the legality of his machines naming as defendants the City of Longview and A.J. Key, in his official capacity as Chief of Police (collectively "the City") and Bobby Weaver, Sheriff of Gregg County. The two companion cases before us are interlocutory appeals from the trial court's denial of two pleas to the jurisdiction filed separately by the City and Weaver (collectively "Appellants") in a single case in the trial court. In two separate briefs, Appellants raise six issues. Because we determine that the trial court does not have jurisdiction to consider this case, we reverse the trial court's orders and remand to the trial court with instructions to dismiss.

## FACTS

On January 23, 1998, the Attorney General issued an opinion, DM–466, stating that section 47.01(4)(B) of the Texas Penal Code[1] is unconstitutional, resulting in a determination by the Attorney General that eight-liners are illegal gambling devices. *See* Op. Tex. Att'y Gen. No. DM–466 (1998). In 1998, Head filed suit in the 188th District Court of Gregg County, seeking declaratory and injunctive relief. He originally named only Weaver as defendant. Head alleged that Weaver had threatened to seize, confiscate or shut down Head's eight-liners based on the authority of DM–466. In part, Head sought

---

1. TEX. PEN.CODE ANN. § 47.01(4)(B) (Vernon Supp.2000).

a declaratory judgment that Penal Code section 47.01(4)(B), which sets out an exception to the definition of illegal gambling device and which Head contends describes his eight-liners, is valid and constitutional, and that the Attorney General had no authority to suspend the exemption of section 47.01(4)(B). On June 18, 1998, the trial court granted a temporary injunction. The court found that Head had vested property rights that would be violated by enforcement or prosecutions based on DM–466. The trial court ordered Weaver to desist and refrain from relying on DM–466 to arrest or prosecute Head or to seize or otherwise interfere with Head's ownership, possession, or operation of his property. Weaver appealed that order to the Texarkana Court of Appeals. *See Weaver v. Head*, 984 S.W.2d 744 (Tex.App.-Texarkana 1999, no pet.). That court held that the trial court had jurisdiction over the matters alleged by Head, but nonetheless reversed the trial court's order because it is improper for the trial court to prohibit an official from relying on legal advice from a proper source. *Id.* at 746–47. The Texarkana court issued its opinion on January 7, 1999, remanding the cause to the 188th District Court for further proceedings.

On November 16, 1999, the Gregg County District Attorney filed a criminal complaint against Head for possession of a gambling device, which is still pending in the Gregg County Court at Law. Head added the City of Longview and A.J. Key, in his capacity as Chief of Police, to his civil action on February 1, 2000. In his Second Amended Original Petition, filed on that date, Head asked the trial court to declare the state's gambling statute, Chapter 47 of the Penal Code, unconstitutional and issue an injunction against criminal prosecution, confiscation, forfeiture or other action based on Chapter 47. On April 4, 2000, Head filed a supplemental petition by which he withdrew his request for a permanent injunction. At a hearing held that same day, the trial court denied Weaver's and the City's previously filed pleas to the jurisdiction. Appellants brought these interlocutory appeals of the trial court's determination that it has jurisdiction over this case.

### APPELLANTS' JURISDICTIONAL ARGUMENTS

▮ Appellants raise several arguments in support of their position that the trial court does not have jurisdiction over this case. Because they overlap, we will address Weaver's issues one and two together with the City's first issue. Appellants complain that Head presents criminal issues to a civil court that a civil court has no jurisdiction to consider, while a criminal case is pending against him in which these issues should be presented. The City asserts that Head's bare statement that Chapter 47 of the Penal Code is unconstitutional, without specific factual allegations and legal bases challenging its validity, is insufficient to invoke the trial court's jurisdiction. Although Head states in his petition that he is attacking the constitutionality of Chapter 47, in reality, Appellants argue, Head is merely seeking a declaration that his machines are legal. Appellants contend that, without a request for injunctive relief, Head merely requests an advisory opinion as to whether his eight-liners are legal. Further, Head did not plead, and cannot prove, any harm to a vested property right. Weaver complains that the trial court, by finding it has jurisdiction, has created the potential for conflicting civil and criminal court rulings on the same issue. Finally, the City asserts that the Texarkana opinion in *Weaver v. Head* is not controlling on the issue of jurisdiction.

### DISCUSSION

▮ Pondering whether he could be held criminally liable for operating his eight-liners, Head attempted to have that question answered in a civil forum by filing a declaratory judgment action. The purpose of a declaratory judgment is to obtain a clarification of one's rights. *J.E.M. v.*

*Fidelity & Cas. Co.*, 928 S.W.2d 668, 671 (Tex.App.–Houston [1st Dist.] 1996, no writ). It is preventive in nature and is intended as a means for determining the rights of parties when a controversy has arisen, even before any wrong has actually been committed. *Id.* A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). A justiciable controversy must be distinguished from an advisory opinion, which is prohibited under both the Texas and federal constitutions. *See id.* at 444.

■■■ Subject matter jurisdiction is an essential requirement to the authority of a court to decide a case. *Id.* at 443. Head was required to allege facts that affirmatively demonstrate the 188th District Court's jurisdiction to hear his declaratory judgment action. *See id.* at 446. Alleging that there are incurable jurisdictional defects visible on the face of Head's pleadings, Appellants' pleas to the jurisdiction challenge the trial court's authority to determine the subject matter of this cause of action. *See Bland Indep. Sch. Dist. v. Blue*, 989 S.W.2d 441, 445 (Tex.App.–Dallas 1999, pet. granted). When deciding a plea to the jurisdiction, the general rule is the trial court must look to the allegations in the petition and must accept those allegations as true. The trial court does not look at the merits of the case. *Id.* at 446. We review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *Id.*

■■■ Head asserts that the Texarkana court has determined that the 188th District Court has jurisdiction over this case and argues that the parties are bound by that determination. The general rule is that once subject matter jurisdiction is properly acquired by a court, no later fact or event can defeat jurisdiction. *Dallas Indep. Sch. Dist. v. Porter*, 709 S.W.2d 642, 643 (Tex.1986). Further, the law of

the case doctrine mandates that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings of the same case. *City of Dallas v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 268 (Tex.App.-Dallas 1994, no writ). However, this doctrine applies only if the facts in the second trial are substantially the same as in the first trial or so nearly the same that they do not materially affect the legal issues involved in the second trial. *Id.* There are several factors distinguishing the case before us from the case that was before the Texarkana court in 1999. Head has added defendants and the State has instituted criminal proceedings against Head. However, the most significant factual difference lies in Head's pleadings, the documents courts consider to determine jurisdiction. More than one year after the Texarkana opinion issued, Head filed a supplemental pleading with the express and sole purpose of withdrawing his request for an injunction. In the context of a declaratory judgment action attacking the validity of a criminal statute, this is a significant fact materially affecting jurisdiction.

■■■ The Uniform Declaratory Judgment Act does not confer any additional subject matter jurisdiction on a court. *Marshall v. City of Lubbock*, 520 S.W.2d 553, 555 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.). The meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction. *State v. Morales*, 869 S.W.2d 941, 945 (Tex.1994). Civil courts do not have jurisdiction to address the validity of penal statutes except under limited circumstances. A civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute only when (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threat-

ened, or (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights. *Id.* at 942. Moreover, the Supreme Court has made it clear that a naked declaration as to the constitutionality of a criminal statute alone, without a valid request for injunctive relief, is not within the jurisdiction of a Texas civil court. *See id.* At the time the trial court first ruled on the jurisdictional issue in 1998, Head was requesting injunctive relief. The live pleadings before the trial court at the time it made the jurisdictional ruling before us requested a declaration as to the constitutionality of Chapter 47 of the Penal Code without a request for injunctive relief. In the context of the determination of the question of jurisdiction in a declaratory judgment action involving a criminal statute, the absence of that request is a fact that materially affects the legal issue of jurisdiction. Accordingly, because the facts of the case are not substantially the same as in the first trial, and at least one new fact materially affects jurisdiction, we determine that we are not bound by the Texarkana court's finding on the issue of jurisdiction.

■ We turn now to our *de novo* review of the question of the trial court's jurisdiction over Head's request for a declaration that this state's gambling statute is unconstitutional. We determine that the 188th District Court does not have jurisdiction to issue a declaratory judgment determining the constitutionality of Chapter 47.

We are purportedly concerned here with the second scenario referred to in *Morales.* A civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute when the enforcement of an unconstitutional statute threatens irreparable harm to property rights. *See id.* at 942. Head made the bare allegation in his Second Amended Petition that Chapter 47 of the Texas Penal Code, in its entirety, is unconstitutional. He did not elaborate. We are left to guess whether he refers to the Texas Con-

stitution, the federal constitution, or both, what specific portions of the constitution are offended, and the specific manner in which Chapter 47, in its entirety, offends. Further, not only did Head fail to identify any particular vested property rights that would be harmed by the application of Chapter 47, he did not make even a bare allegation that application of Chapter 47 would harm any vested property right. *See Dearing v. Wright,* 653 S.W.2d 288, 290 (Tex.1983) (Robertson, J., concurring) (trial court lacked jurisdiction where Dearing failed to plead or prove that any vested right will be injured). Head's petition refers to specific articles and sections of the Texas Constitution and to specific amendments to the federal constitution only with regard to his complaints against DM–466. Likewise, his references to injured vested property rights are all tied to his complaints that law enforcement officials, following the direction of DM–466, are violating his constitutional rights by prohibiting the use of his eight-liners. Allegations directed at DM–466 are not pertinent to the question of jurisdiction, the only question before us.

Head condemned all of Chapter 47, which is entitled "Gambling." It defines at least nine terms and describes numerous offenses. *See* TEX. PEN.CODE ANN. §§ 47.01–.02, 47.09 (Vernon Supp.2000), §§ 47.03–.08 (Vernon 1994). The record before us indicates a prosecution is pending against Head for possession of gambling devices pursuant to section 47.06 and incorporating the definition of gambling device in section 47.01(4). The pleadings do not show that Head is in danger of being prosecuted for any other offense named in Chapter 47. Therefore, a declaration that the entire chapter is unconstitutional would be improper as Head presents, at best, only hypothetical questions regarding the majority of that chapter, rather than the required justiciable controversy. *See Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855, 858 (Tex.1979) ("A judgment under the Uniform Declaratory

Judgments Act depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy, although such questions may in the future require adjudication."). Further, portions of Chapter 47 have previously withstood attacks on constitutional grounds. *See State v. Taylor*, 805 S.W.2d 440, 442 (Tex.Crim. App.1991) (held section 47.04(a), offense of keeping a gambling place, not unconstitutionally vague); *Garrett v. State*, 721 S.W.2d 480, 482 (Tex.App.-Beaumont 1986, no pet.) (held section 47.03(a)(1), offense of gambling promotion by operating or participating in the earnings of a gambling place, not unconstitutionally vague). Moreover, section 47.01(4)(B), which sets out the exception to the definition of illegal gambling device that goes to the heart of Head's case, has recently been found constitutional by the Amarillo Court of Appeals reviewing a criminal conviction for possession of a gambling device. *See Owens v. State*, 19 S.W.3d 480, 484 (Tex.App.-Amarillo 2000, no pet.).

Additionally, while his petition refers globally to Chapter 47, there seems no question that Head is actually only concerned with section 47.01(4)(B). To the extent Head has requested relief in the form of a declaration that his machines are not illegal gambling devices, such relief is inappropriate as it involves a question of fact. *See Warren v. Aldridge*, 992 S.W.2d 689, 691 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (trial court had no jurisdiction to declare that use of eight-liners does not constitute criminal activity); *Emmco Ins. Co. v. Burrows*, 419 S.W.2d 665, 671 (Tex.Civ.App.-Tyler 1967, no writ) (declaratory judgment is not proper remedy to resolve factual dispute).

■ As explained above, Head's petition lacks specificity with regard to the jurisdictional allegations he is required to set forth. Additionally, the petition fails to request an injunction as required by *Morales*. Any declaration of the trial court relative to the constitutionality of the stat-

ute is unenforceable except by injunction. *Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex.Civ.App.-Galveston 1955, writ ref'd n.r.e.). If Head's petition could garner any relief from the trial court, it would be merely advisory. No controversy would be resolved. Accordingly, a "naked" declaration that Chapter 47 is unconstitutional, without a valid request for injunctive relief, is not within the civil district court's jurisdiction. *See Morales*, 869 S.W.2d at 947; *Dallas County Dist. Attorney v. Doe*, 969 S.W.2d 537, 542 (Tex.App.-Dallas 1998, no pet.).

■ In light of the state of Head's deficient pleadings, we hold that the 188th District Court does not have jurisdiction over this action. Further, in the absence of any showing that vested property rights are in jeopardy, these questions can be resolved in the pending criminal proceeding and there is no occasion for the intervention of a civil court. *See Morales*, 869 S.W.2d at 945. The opportunity to assert the unconstitutionality of a penal provision as a defense to a criminal prosecution is an adequate remedy at law. *State v. Logue*, 376 S.W.2d 567, 572 (Tex.1964); *City of Austin v. Austin City Cemetery Ass'n*, 87 Tex. 330, 28 S.W. 528, 530 (1894). In some instances, irreparable injury may occur where the enforcement of the penal provision would result in the destruction of the property before the validity of the provision could be tested in the courts. *Adams v. Antonio*, 88 S.W.2d 503, 506–07 (Tex. Civ.App.-Waco 1935, writ ref'd). However, Head's pleadings do not show that is the case here. The harm inherent in prosecution for an offense does not constitute irreparable harm as contemplated by *Morales*. *See City of Dallas v. Dallas County Housemovers Ass'n*, 555 S.W.2d 212, 214 (Tex.Civ.App.–1977, no writ). Further, where civil courts exercise equity jurisdiction to determine the constitutionality of criminal statutes, there exists a real danger of conflicting decisions between civil and criminal courts of last resort regarding the validity of such statutes. *See Mor-*

*ales,* 869 S.W.2d at 947–48. We conclude that the 188th District Court does not have jurisdiction to issue a declaratory judgment determining the constitutionality of Penal Code Chapter 47. We sustain Weaver's first and second issues and the City's first issue.

In his third issue, Weaver asserts that the trial court lacked jurisdiction over Head's suit because Head sued the wrong parties. We agree. Authority to enforce criminal statutes is vested in district and county attorneys. *See* TEX. CONST. art. V, § 21; *Lone Starr Multi Theatres, Inc. v. State,* 922 S.W.2d 295, 298 (Tex.App.-Austin 1996, no writ). The party responsible for enforcement of the allegedly unconstitutional statute must be the defendant against whom suit for declaratory relief is brought. *Lone Starr,* 922 S.W.2d at 297. In the absence of that party, the petitioner merely requests an advisory opinion. *Id.* Accordingly, Head's failure to name as a party the district or county attorney of Gregg County constitutes an additional ground for our holding that the 188th District Court does not have jurisdiction over this cause. We sustain Weaver's third issue. Due to our disposition of these issues, we need not address the remainder of Appellants' complaints. *See* TEX.R.APP. P. 47.1.

Subject matter jurisdiction is lacking when, as here, incurable jurisdictional defects are shown on the face of the plaintiff's pleadings. *See Blue,* 989 S.W.2d at 445. When subject matter jurisdiction is lacking, dismissal is required, regardless of the stage in the proceedings at which the lack of subject matter jurisdiction arises. *Morales,* 869 S.W.2d at 949; *General Tel. Co. v. City of Point Comfort,* 553 S.W.2d 808, 811 (Tex.Civ.App.-Corpus Christi 1977, no writ). Accordingly, we reverse the trial court's order, dated April 13, 2000, denying Weaver's Second Amended Plea to the Jurisdiction and the trial court's order, dated April 7, 2000, denying the City's Plea to the Jurisdiction and remand this case to that court with in-structions to *dismiss for want of jurisdiction.*