John CORNYN, Attorney General for the State of Texas, Appellant,

v.

H.O. AKIN, Jr., Jack Pendergraft and Pen Roy Oil, Inc., Charles Babcock, Elizabeth Babcock, J.H. Tinsley, Nina K. Tinsley, and Vegas Vegas Amusements, Inc., Appellees.

No. 08–00–00358–CV.

Court of Appeals of Texas, El Paso.

July 19, 2001.

Lisa R. Eskow, Office of Atty. Gen., Sherri K. Tibbe, Asst. Atty. Gen., Austin, for Appellant.

Allen R. Stroder, H. Thomas Hirsch, Hirsch & Stroder, L.L.P., Odessa, Eddie G. Shell, Burnett, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

### OPINION

LARSEN, Justice.

Texas Attorney General John Cornyn, representing the State, appeals from the trial court's order denying the State's plea to the jurisdiction. We reverse and remand to the trial court with instructions to dismiss for lack of jurisdiction.

### FACTS

H.O. Akin, Jr., Jack Pendergraft and Pen Roy Oil, Inc., Charles Babcock, Elizabeth Babcock, J.H. Tinsley, Nina K. Tinsley, and Vegas Vegas Amusements, Inc. (plaintiffs) owned and operated "eight-liners," machines they describe as video games licensed by the State of Texas as amusements. On February 16, 2000, law enforcement officers seized the machines and gambling charges were filed against the plaintiffs in the Ector County Court at Law.

Plaintiffs filed a civil suit in the 70th Judicial District Court of Ector County, Texas challenging the seizure of their eight-liners and requesting a temporary injunction restoring immediate and permanent possession of the eight-liners, and a declaratory judgment prohibiting the seizure of the eight-liners upon final disposition of the civil suit. The State filed a plea to the jurisdiction, urging that the district court possessed no collateral civil jurisdiction over plaintiffs' suit because its subject matter concerned evidence seized in connection with criminal prosecutions pending before other courts.

The 70th Judicial District Court held a hearing on the group's declaratory and injunctive issues and the State's plea to the jurisdiction. At that hearing, the trial court stated that seizure issues are "supposed to be resolved" in the criminal courts. The trial judge, however, then stated, "I am a little uncomfortable though with what authority they would have, that's why I am saying I am willing to enter this order that nothing be messed with until we get this resolved." Nevertheless, the trial court refrained from entering any order at that time.

One month later, the trial court signed a temporary order instructing the Attorney General "to maintain and keep safe any video machines … seized … on … February 16, 2000" and "not to destroy any items confiscated … pending further ORDERS of this Court." The State objected to this temporary order and moved to dismiss the suit in its entirety, urging once again the arguments contained in its previous plea to the jurisdiction. The 70th Judicial District Court held a second hearing, at which it again confirmed its intent to control the seized property while monitoring the criminal proceedings:

> [M]y ruling essentially was, I did think that the criminal proceeding had basic jurisdiction over the property and I was only going to enter an order that it not be destroyed pending a determination of those matters in the criminal courts.
>
> In other words, I did not intend my order to go beyond that just to say these items are to be held until there is a disposition by the other courts.
>
> . . .
>
> I tried to enter an order that was not intrusive on what I consider to be the court with the dominant jurisdiction. Just because one court has jurisdiction doesn't mean the other doesn't have any. That was my view. And it was my intent just to make sure nothing was disposed of until there is a proper determination of the case.
>
> . . .
>
> [The Temporary Order] says not to destroy any items confiscated pending further orders of the Court. Once there is a final conviction, I am sitting here, I can't pre-commit to something, but I can't imagine that I wouldn't order that whatever that court wants to do with the property could be done. But I mean, I don't know. But that gives me a little leeway to look at it.

Judge Gibson then overruled the Attorney General's objections to the Temporary Order and orally denied the State's plea to the jurisdiction. On July 26, 2000, the trial court entered its written order denying the Attorney General's plea to the jurisdiction. It is from this order that the Attorney General now appeals.

## STANDARD OF REVIEW

■ Whether the trial court properly denied appellant's plea to the jurisdiction presents a pure question of law that we

examine under a de novo standard of review.[1]

## Plea to the Jurisdiction

■ In deciding whether a civil court had jurisdiction to enter any orders relating to a pending criminal matter in a different court, we look to *State v. Morales.*[2] There, the Texas Supreme Court stated:

In this state's bifurcated system of civil and criminal jurisdiction, a civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute only when (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened, *or* (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights. A naked declaration as to the constitutionality of a criminal statute alone, without a valid request for injunctive relief, is clearly not within the jurisdiction of a Texas court sitting in equity.[3]

In other words, before a civil court may enjoin enforcement of a penal statute, complainant must both attack the constitutionality of the provision with specificity, and urge that its enforcement would irreparably injure vested property rights.[4] If either of these requirements is not satisfied, then the trial court has no jurisdiction to enjoin the proceeding.[5][6]

■ We must therefore determine whether plaintiffs' petition satisfied both jurisdictional elements by challenging the constitutionality of the penal statute in question, and claiming that its enforcement would irreparably injure their vested property rights.[7] Their petition alleges:

Plaintiffs own and operate video games known as 'eight liners.' Said games and business is operated legally pursuant to § 47.01(4)(B) of the Texas Penal Code. However, on or about February 16, 2000, through his authorized agents and pursuant to his authority, seized said video games as well as other assets of Plaintiffs. All eight liners are duly licensed by the State of Texas as amusements. . . .

. . .

1. *See County of El Paso v. Dorado*, 33 S.W.3d 44, 46 (Tex.App.—El Paso 2000, no pet.).

2. 869 S.W.2d 941 (Tex.1994). The *Morales* case involved a challenge to the constitutionality of the state sodomy statute. Based on the representation of the attorney general that the statute had not and probably would not be enforced against consenting adults acting in private, and that even if the statute were enforced no vested property rights were alleged to be affected thereby, the Supreme Court determined that the court had no jurisdiction to declare the statute unconstitutional and enjoin its enforcement. *Id.* at 946–47; *see also Robinson v. Jefferson County*, 37 S.W.3d 503, 508 (Tex.App.—Texarkana 2001, no pet. h.).

3. *See Morales*, 869 S.W.2d at 942.

4. *See Letson v. Barnes*, 979 S.W.2d 414, 418 (Tex.App.—Amarillo 1998, pet. denied).

5. *See id.*

6. Plaintiffs contend that a careful reading of its petition shows they were not seeking to enjoin enforcement of a penal statute because at the time the machines were seized and the temporary order entered, it had not yet been determined that the machines were illegal. Thus, plaintiffs were only seeking to immediately and permanently recover still-legal property that belonged to them. Plaintiffs cite no authority, however, to support the proposition that an illegal seizing occurs when the evidence seized is eventually determined to be illegal.

7. *See id.*

Plaintiffs are suffering losses incapable of calculation due to the loss of income in their businesses utilizing the assets wrongfully seized by Defendant.

Plaintiffs have no legal remedy because the State of Texas may not be sued for damages in this instance. Plaintiffs' damages are irreparable....

We find nothing in plaintiffs' pleading implicating the constitutionality of section 47.01(4)(B). In a similar case, *City of Longview v. Head*,[8] the Tyler Court of Appeals reviewed the plaintiff's petition containing the bare allegation that Chapter 47 in its entirety was unconstitutional.[9] Left to guess whether the plaintiff was referring to the Texas Constitution, the federal constitution, or both, what specific portions of the constitution were offended, and the specific manner in which Chapter 47 in its entirety offended any constitution, the Tyler court concluded that the plaintiff's pleading lacked the specificity regarding equity jurisdiction which *Morales* mandates.[10] Here, plaintiffs' petition makes no constitutional attack on section 47.01(4)(B); rather, they expressly state that the machines were operated "legally" pursuant to that statute.[11] Because one of the two *Morales* elements has not been satisfied, we hold that the civil trial court had no jurisdiction to enter any order regarding the care and disposition of the seized evidence.[12]

## CONCLUSION

We conclude that the trial court had no jurisdiction. Accordingly, we reverse the trial court's denial of the State's plea to the jurisdiction, vacate the temporary order, and remand this cause to that court with instructions to dismiss for want of jurisdiction.[13]

8. 33 S.W.3d 47 (Tex.App.—Tyler 2000, no pet.).

9. *See Head,* 33 S.W.3d at 52.

10. *See id.* at 52, 53 (finding also that plaintiff failed to show that vested property rights were in jeopardy and failed to request injunction as required by *Morales* ).

11. We note that section 47.01(4)(B) has recently been found constitutional by the Amar-illo Court of Appeals reviewing a criminal conviction for possession of a gambling device. *See Owens v. State,* 19 S.W.3d 480, 484 (Tex.App.—Amarillo 2000, no pet.); *Head,* 33 S.W.3d at 53.

12. *See Letson,* 979 S.W.2d at 418.

13. *See Head,* 33 S.W.3d at 54.