Delores A. OWENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–99–0010–CR.

Court of Appeals of Texas,
Amarillo.

April 4, 2000.

Stephen Fenoglio, Anatole R. Barnstone, Austin, Eddie G. Shell, Shell & Associates, Burnet, for appellant.

William C. Sowder, Criminal Dist. Atty., Lubbock, Matthew L. Wade, Asst. Criminal Dist. Atty., for appellee.

Barry K. Bishop, Marnie A. McCormick, Clark, Thomas & Winters, Austin, John Cornyn, Atty. Gen., Idolina Garcia McCullough, Asst. Sol. Gen., Andy Taylor, First Asst. Atty. Gen., Shane Phelps, Deputy Atty. Gen., for Criminal Justice, Gregory S. Coleman, Sol. Gen., William F. Lewis, Jr., Asst. Atty. Gen., amici curiae.

Before QUINN and REAVIS and JOHNSON, JJ.

REAVIS, Justice.

Following her plea of nolo contendere and her waiver of a jury trial and pre-sentence investigation, appellant Delores A. Owens was convicted by the court of possession of a gambling device, a Class A misdemeanor, and punishment was assessed at a $250 fine. Appealing with permission of the trial court, appellant presents two issues contending that in her prosecution for possession of a gambling device under section 47.06 of the Texas Penal Code,[1] the trial court (1) erred in declaring section 47.01(4)(B) unconstitutional, and (2) acted beyond its authority in declaring section 47.01(4)(B) unconstitutional. Based on the rationale expressed herein, we reverse and remand.

Because appellant does not challenge the sufficiency of the evidence, only the facts necessary to the disposition of this appeal will be discussed. At a pretrial hearing held on December 4, 1998, Lubbock Police Officer Bill Bates testified that he and Sergeant David Tillery on March 16, 1998, conducted an undercover investigation of an establishment known as the Riviera. His account of the investigation was detailed in his six page affidavit for a search warrant dated March 20, 1998, which was admitted into evidence. During the undercover investigation, Bates observed over sixty video poker or video lottery machines, commonly known as eight-liners, which were plugged in and operational. None of the machines were video games. He described in detail playing some of the machines and questions he asked in seeking assistance from employees. According to Bates, some of the machines were capable of accepting bills in denominations of one, five, ten, and twenty, and all appeared to have payoffs greater than $5 in merchandise gift certificates. Bates concluded in his affidavit that in his opinion, appellant was in violation of three statutes: (1) promotion of gambling, section 47.03; (2) keeping a gambling place, section 47.04; and (3) possession of a gambling device, section 47.06.

By information filed March 20, 1998, and amended on December 3, 1998, appellant was charged with one count of gambling promotion, to-wit: participating in the earnings of a gambling place,[2] and by a second count, with possession of a gambling device, to-wit: electronic lottery machines, being a facsimile of a traditional slot machine, including but not limited to "Super 2 in 1", "Cherry Master", "Poker Master," and "Fruit Bonus" machines which she knew were designed for gambling purposes.[3] Appellant was not charged with keeping a gambling place.

---

1. All references to the Penal Code are to the Texas Penal Code Annotated (Vernon 1994 & Supp.2000).

2. *See* § 47.03(a)(1).

3. *See* § 47.06(a).

On December 9, 1998, the court again heard various pretrial matters. The State presented a motion in the nature of a motion in limine, which would ultimately impact the court's charge. Relying on Attorney General Dan Morales's opinion,[4] the State urged that section 47.01(4)(B) violated Article III, section 47 of the Texas Constitution and thus, should not be a defense to the charge of possession of a gambling device. In response, appellant opposed the State's position and specifically asserted that section 47.01(4)(B) provided two defenses for appellant: (1) the statute permits the machines; and (2) appellant did not intend to further gambling as exemplified by her reliance on opinions of professionals. Following discussion, the court recessed the hearing for the State to prepare an appropriate motion. When the pretrial conference was reconvened, the State presented its written motion contending that section 47.01(4)(B) was unconstitutional because it conflicted with Article III, section 47(a) of the Constitution. After considering the motion, the court (1) overruled appellant's motion to dismiss, (2) announced that he agreed with the opinion of the Attorney General, and (3) signed the order presented by the State. Although the order incorrectly recited section 43(a) instead of section 47(a)

of the Constitution, counsel for appellant made no objection in the trial court to the "miscitation,"[5] and appellant does not present an issue regarding the "miscitation" to section 43(a) instead of section 47(a).

After the trial court ruled that section 47.01(4)(B) was unconstitutional and was therefore unavailable to appellant as a defense, the parties announced a plea bargain agreement. Pursuant to the agreement, as material here, appellant plead nolo contendere to the second count of possession of a gambling device, and her punishment was set at a fine of $250, and the first count of gambling promotion was dismissed.[6]

By her first issue, appellant contends the trial court erred in declaring section 47.01(4)(B) of the Penal Code unconstitutional. We agree. Appellant was convicted of possession of a gambling device under section 47.06 of the Penal Code. After the decision in *State v. Mendel*, 871 S.W.2d 906 (Tex.App.—Houston [14th Dist.] 1994, no pet.) in which the court upheld the constitutionality of section 47.06 as it existed prior to being amended,[7] the Legislature added subsections (A) and (B), effective September 1, 1995.[8] As relevant here,

**4.** Op. Tex. Att'y Gen. No. DM–466 (1998) (determining that section 47.01(4)(B) is unconstitutional).

**5.** A reading of the reporter's record of the pretrial conference shows that the reference to section 43(a) in the order instead of section 47(a) was insignificant because the record shows that the trial judge and counsel were aware of the appropriate constitutional provision under consideration.

**6.** We note that a prosecution under section 47.03 or section 47.04 does not implicate the term "gambling device" as defined in section 47.01(4)(A) & (B).

**7.** *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 19, 1995 Tex. Gen. Laws 2734, 2742.

**8.** § 47.01 Definitions

\* \* \*

(4) "Gambling device" means any electronic, electromechanical, or mechanical contri-

vance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

(A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novel-

the State contends that in the underlying prosecution for possession of a "gambling device," the exception to that term provided by subsection (B) is unconstitutional. Because the State's motion presented the trial court with a case of first impression, Attorney General Opinion DM–466 provided little authority, and was basically a review of the constitutional provision, legislative history, and analysis. By amicus curiae brief in support of the State, Attorney General John Cornyn submits that eight-liners do not fit the description of devices excluded under section 47.01(4)(B) of the Penal Code and, therefore, appellant's conviction should be affirmed. He also asserts that a construction of the statute to include eight-liners would render the statute unconstitutional.

## Standard of Review

Questions concerning the constitutionality and interpretation of a criminal statute are questions of law that we review *de novo* without deference to the ruling of the trial court. *State v. Salinas*, 982 S.W.2d 9, 10–11 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); *see also Kerr v. Texas Dept. of Public Safety*, 973 S.W.2d 732, 734 (Tex.App.—Texarkana 1998, no pet.). Moreover, we must presume the statute is valid and resolve all doubts in favor of the statute's constitutionality. *Kerr*, 973 S.W.2d at 734. The presumption of validity "obtains until the contrary is shown *beyond a reasonable doubt.*" *Ex parte Granviel*, 561 S.W.2d 503, 515 (Tex. Cr.App.1978) (en banc). (Emphasis added).

## Analysis

The power to enact laws is vested through the Texas Constitution in the Legislature. *Cook v. State*, 902 S.W.2d 471, 479 (Tex.Cr.App.1995). The Texas Constitution provides:

> The Legislature shall pass laws prohibiting lotteries and gift enterprises in this State other than those authorized by Subsections (b), (d), and (e) of this section.

Tex. Const. art. III, § 47(a). We note that the provision does not define "lottery" nor "gambling device," and does not denounce nor criminalize ownership or possession of gambling devices. In accordance with Article III, section 47(a) of the Constitution, the Legislature enacted five statutes [9] declaring gambling, gambling promotion, keeping a gambling place, communicating gambling information, and possession of gambling device, equipment, or paraphernalia to be misdemeanor offenses. Although section 47.01 does not declare unlawful conduct, it defines "gambling device," § 47.01(4)(A) and (B), and also defines "lottery." § 47.01(7).

After the trial court dismissed the first count charging appellant with gambling promotion, she plead nolo contendere to possession of a gambling device. Although the operation or use of eight-liners might offend Article III, section 47(a) of the Constitution, or their operation might be unlawful under chapter 47 of the Penal Code, questions we do not decide, considering that the Constitution does not denounce nor criminalize ownership or possession of gambling devices, and applying the appropriate standard of review, we do not agree that to the extent Article III, section 47(a) is relevant to or applies to appellant's conviction that section 47.01(4)(B) of the Penal Code is unconstitutional.

Moreover, before Article III, section 47 was amended in 1980, 1989, and 1991 to authorize the Legislature to enact laws permitting bingo games, charitable

\* \* \*

ties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

**9.** *See* §§ 47.02, 47.03, 47.04, 47.05, and 47.06.

raffles, and a lottery operated by the State, *see* Tex. Const. art. III, § 47(b), (d), and (e), lotteries were denounced in any form. The former version of Article III, section 47 provided:

> The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, *as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States.*

Tex. Const. art. III, § 47 (amended 1980) (Emphasis added). The current version of Article III, section 47(a) is substantially the same, except that as amended, it permits certain lotteries. Significantly, the portion denouncing the *sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle* ... did not survive the amendment process. In its present form, the Constitution does not define "lottery" or "gambling device." Where, as here, a constitutional provision is not self-executing,[10] it is incumbent on the Legislature to enact legislation to implement public policy. *City of Corpus Christi v. City of Pleasanton*, 154 Tex. 289, 276 S.W.2d 798, 803 (1955). The Legislature may define terms which are not defined in the Constitution itself, provided its definitions constitute reasonable interpretations of the constitutional language and do not do violence to the plain meaning and intent of the constitutional framers. *Schwenke v. State*, 960 S.W.2d 227, 233 (Tex.App.—Corpus Christi 1997, pet. denied). In the absence of constitutional restraint or definition to the contrary, the Legislature possesses the power to create and define offenses within its sound discretion. *Willis v. State*, 790 S.W.2d 307, 314 (Tex.Cr.App.1990). Such power also includes the power to "establish and define the defenses to criminal offenses." *Id; see also Ex Parte Smith*, 441 S.W.2d 544, 547 (Tex.Cr.App.1969) (discussing inherent power of the Legislature to define crimes).

10. *Compare* Tex. Const. art. XVI, § 11, (denouncing and defining usury except as provided by the Legislature), Tex. Const. art.

 Applying the presumption of validity to the Legislature's definition of "gambling device" in section 47.01(4)(A) and (B), *see Granviel*, 561 S.W.2d at 515, and the standard of review, we conclude the trial court erred in holding section 47.01(4)(B) of the Penal Code unconstitutional in this prosecution for possession of a gambling device. Appellant's first issue is sustained. Our sustention of appellant's first issue pretermits consideration of appellant's second issue. Tex.R.App. P. 47.1.

Accordingly, the judgment is reversed and the cause is remanded to the trial court for further proceedings.

XVI, § 41, (declaring bribery of an executive or judicial officer or other official to be an offense).